**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 21-40** |
| **GLENN W. PHILLIPS** | : | |

## ORDER

AND NOW, this            day of                    , 2022, it is hereby

ORDERED that the government's motion *in limine* to compel production of reciprocal

discovery pursuant to Federal Rule of Criminal Procedure 16(b)(1)(A), including but not

limited to translation software and business records or, in the alternative, to exclude use

of such evidence at trial, is GRANTED.

The defendant shall produce all reciprocal discovery pursuant to Rule 16(b)(1)(A)

forthwith, and no later than                    2022.

BY THE COURT:

_____
HONORABLE C. DARNELL JONES II
*Judge, United States District Court*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 21-40** |
| **GLENN W. PHILLIPS** | : | |

**GOVERNMENT'S MOTION IN LIMINE TO COMPEL PRODUCTION OF RECIPROCAL DISCOVERY PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 16(b)(1)(A) OR, IN THE ALTERNATIVE, TO EXCLUDE USE OF SUCH EVIDENCE AT TRIAL**

The United States of America, by its undersigned attorneys, Jennifer Arbittier Williams, United States Attorney for the Eastern District of Pennsylvania, and Karen L. Grigsby, Assistant United States Attorney for the district, moves this Court *in limine* to compel production of reciprocal discovery pursuant to Federal Rule of Criminal Procedure 16(b)(1)(A), including but not limited to translation software and business records or, in the alternative, to exclude the use of such evidence at trial. In support of this motion, the government represents as follows.

I. **PROCEDURAL HISTORY**

On February 17, 2021, a grand jury returned an indictment charging Glenn Phillips with two counts of wire fraud, in violation of 18 USC § 1343, and four counts of mail fraud, in violation of 18 U.S.C. § 1341, as a result of two related investment schemes that Phillips conducted from approximately 2013 through 2016, with lulling letters being sent as late as March 2018. Trial is scheduled for July 11, 2022.

II.    **STATEMENT OF FACTS**

***Phillips's solicitation of Baptist church members for loans to market
his supposed language translation software***

Phillips's first scheme targeted members of a church in Quakertown, "CBC," as well as members of two other churches, "SVBC" in Harrisburg and "HBC" in Hanover.  The scheme was simple.  Phillips told prospective investors that he had developed software that would provide simultaneous translation of foreign languages, and he needed to raise $250,000 to travel to Australia to market the software for sale. Phillips promised to donate money to the church once he sold his software: $1 million at CBC, which was trying to raise money for a new building; $1 million at HBC, for a new school building; and four times the amount invested by members at SVBC.  Some investors told law enforcement that Phillips's promised donation was more of a motivating factor for their investment than the 10% return Phillips promised them on their investment.

When church members agreed to lend money, Phillips gave the church members Promissory Notes for one-year or two-year loans at 10% interest.  The church members' checks were made payable to Phillips's company, Global Apps Corporation.  Phillips deposited the church members' funds into an account in the name Global Apps Corporation (Bank of America account ending 5405) and, in at least one instance, into an account in the name GlobalDLP.COM.DE. Inc. (Bank of America account ending 1036). Phillips then used the church members' funds to pay for hotel and restaurant charges,

2

retail purchases, gas charges, and other living expenses, all principally in Virginia and
Pennsylvania.  (At the time of this scheme, Phillips was living in Lynchburg, VA;
however, he previously had lived in Pennsylvania, and so knew some of the church
members from his time here, and he traveled between the two states.)  Phillips also used
some of the church members' funds to repay a person in Virginia from whom Phillips
had solicited an earlier loan, purportedly to help launch his software business.
Additionally, Phillips used some of the church members' funds to make large cash
withdrawals.

Phillips also transferred (directly, or in a series of transfers) some of the church
members' funds into other bank accounts on which Phillips had sole signature authority,
including an account in the name GAppsCor Development LLC (First National Bank of
Alta Vista account ending 0920) and accounts in the name DLP Global LLC (First
Citizens Bank accounts ending 0345 and 4015).  Phillips used some of this money to buy
his house.[1]  When Phillips transferred investor funds from one account to another
account, he then used the newly transferred funds for daily living expenses, cash

---

[1]      Phillips transferred more than $20,000 of investor money to AMP/JSP/SPP VA
REALTY LLC (one of his corporations, the name of which is composed of his children's
initials).  Approximately two weeks later, the corporation purchased the house in which
Phillips and his wife were living as renters.  Approximately seven months later, Phillips
(on behalf of his corporation AMP/JSP/SPP VA REALTY LLC) sold the house to his
children.  Mortgage records show that Phillips gifted his children an amount equal to the
down payment.  Although Phillips sold the house to the children, he and his wife still
reside there.

withdrawals, and/or transfers to other accounts, until he had essentially depleted all of the church members' funds.

> Phillips's letters extending the loan maturity dates and assuring the investors that their money was safely accruing interest

When an individual church member's loan was about to reach its maturity date, and therefore Phillips was required by the terms of the loan agreement to repay the loan amount with interest to the individual church member, Phillips did not repay the church member.  Instead, Phillips generally presented the church member with a document extending the maturity date.  When the new extended maturity date was approaching, Phillips sometimes presented the church member with another document extending the maturity date yet again, and in some instances, Phillips presented some church members with a document extending the maturity date yet a third time.

Eventually, Phillips mailed church members a one-page letter dated March 28, 2016, in which he advised them of a delay but promised to repay their loans on September 30, 2016.  In the letter, Phillips also told the church members that their "Loan/Corporate Note, is in full force and effect, earning 10% APR interest, with annual compounding of interest" – a blatantly false statement, as shown by the bank records.

**Phillips's threat to sue**

In September 2016, when Phillips's payment on the Promissory Notes to CBC investors was due, Phillips sent the CBC investors a six-page document titled "September 28, 2016 – First Notice."  The Notice implied that church members had sabotaged either

4

the church building project or Phillips's company GAC, and due to GAC's intent to litigate, all maturity dates on the investors' loans were extended to December 31, 2016. In October 2016, Phillips sent CBC investors a "Second Notice," stating that all future communications must be in writing.

In November 2016, W.G., one of the investors, contacted police and reported that Phillips had defrauded him and other members of his church of approximately $250,000.

### *Phillips' solicitation of funding for a "fast track" IPO*

In a separate but related scheme, in 2015, Phillips solicited one of the CBC investors, K.W.H., to lend him money to "fast track" an initial public offering ("IPO") of Phillips's company.  K.W.H. agreed to lend Phillips $5,000 for two years at 20% interest.

On or about March 19, 2015, K.W.H. gave Phillips a check for $5,000 payable to GlobalDLP.com.DE.  On March 20, 2015, a $5,000 credit was posted to an account in the name GlobalDLP.Com.DE Inc. (Bank of America account ending 1036).  Prior to this credit, the balance in this account was less than $400.  Immediately after the $5,000 credit was posted to the account, a $4,000 cash withdrawal was posted from the account. That same day and over the next two next two weeks, numerous Point of Sale charges for food, lodging, and living expenses were posted to the account, until the account balance was less than $100.

In May 2017, when Phillips' payment on the Promissory Note was overdue, K.W.H. received a letter from Phillips postmarked May 13, 2017.  In the letter, Phillips stated that he was "Reconfirming original Principal of your March 19, 2015 Loan to

5

GlobalDLP.com.CA, Inc. [sic] of USD $5,000, at an APR rate of 20%, with annual compounding, makes the compounded Interest Earned a total of $2,200.00, on the 'initial' maturity date of March 18, 2017, per note yield, and a total due of USD $7,200.00."  Phillips stated that "Solely for the benefit of GlobalDLP.com.CA, Inc.," K.W.H.'s "distribution" would be deferred to July 18, 2017, "or sooner."  Phillips assured K.W.H. that "Until the 'actual/final/ distribution, your Principal, of $7,200.00 as of the 'initial' maturity date, will 'again' continue to accrue Interest on Unpaid Principal balance at the APR of 20%."  (Emphasis in original.)

In July 2017, K.W.H. received a letter from Phillips postmarked July 10, 2017. Phillips once again confirmed the debt and once again informed K.W.H. that his distribution was being deferred, this time until September 28, 2017, "or sooner."  Once again, Phillips assured K.W.H. that the money he had lent Phillips's company would continue to accrue interest at the APR of 20%.

In September 2017, K.W.H. received a letter from Phillips postmarked September 18, 2017.  Once again, Phillips confirmed the debt and once again stated that K.W.H.'s distribution was being deferred, this time until January 18, 2018, "or sooner."  Once again, Phillips assured K.W.H. that the money that he had lent Phillips's company would continue to accrue interest at an APR of 20%.

There was never any IPO of Phillips's company, and Phillips never repaid K.W.H.

### *Philips's solicitation of funding to take his business to Canada*

In a third related scheme, in 2014 and 2015, Phillips solicited investments from three persons who were not affiliated with CBC, HBC, or SVBC.  Phillips told these people that he had language translation software, and he gave each one a slightly different explanation of why he needed to raise money: to build or buy a "bricks and mortar store" in Canada to recruit larger investors and hire more computer programmers; to help secure patents and get his language translation software business established on the Canadian stock exchange; and to use as seed capital to take the company to the next level with an investor group in Canada.

The three individuals invested a total of $46,000, executing two-year promissory notes at 20%.  Phillips deposited $45,000 of this money into an account in the name of one of his companies, GlobalDLP.COM.DE.  (One of the investors gave Phillips $1,000 in cash, and the government has not traced that.)  Bank records show that Phillips used this money for food, gas, lodging, and other living expenses, and cash withdrawals. When the promissory notes became due, Phillips made excuses for his non-payment. Eventually, Phillips stopped responding to the investors' calls and texts.

Phillips never repaid the three investors.[2]

---

[2]    This scheme is not charged in the indictment, but the government seeks to introduce evidence of it pursuant to Fed. R. Crim. P. 404(b) and has filed a separate motion *in limine* addressing the admission of this evidence.

**Total losses**

A total of approximately two dozen investors invested (loaned Phillips's companies) a total of approximately $413,000 in these various schemes. Of these investors, only approximately three appear to have been repaid, for a total of approximately $28,522 – and these three were repaid from other (later) investors' money.

## III.   FACTUAL BACKGROUND OF THIS MOTION

As set forth above, Phillips solicited numerous investors for loans (1) to market language translation software that he claimed to have developed; (2) to fund an IPO of his software; (3) to build or buy a "bricks and mortar store" in Canada to recruit larger investors and hire more computer programmers; (4) to help secure patents and get his language translation software business established on the Canadian stock exchange; and (5) to use as seed capital to take the company to the next level with an investor group in Canada. Phillips repeatedly assured investors that their money was safe and earning interest. However, as the government's evidence shows, Phillips spent the investors' money on living expenses, including the down payment on the house in which he lives. Phillips has never repaid his investors, and when they sought repayment, he threatened legal action.

Significantly, the government's evidence will also show that with few exceptions, Phillips did not provide any demonstration of his alleged software to his investors but

rather only explained its capabilities and answered questions.[3]   The government's

evidence will also show that Phillips has not traveled outside the United States since 2001

(so he certainly never traveled to Australia or Canada to market anything), and a review

of his companies' bank account records did not reveal any charges for international travel

or marketing expenses.   Moreover, a review of all of Phillips's bank account records in

the government's possession showed minimal balances, if any, in his accounts by 2016;

indeed, most of the accounts were depleted before then.   Finally, when (as discussed

below) he was served with the grand jury subpoenas for his companies' records, Phillips

(as records custodian) provided no records of any kind – and specifically, he provided no

bank records showing that the investors' funds still existed somewhere, earning interest.

### Phillips's non-production of business records and/or software

During its investigation, the government prepared approximately 18 grand jury

subpoenas for business records of Phillips's various companies.   Each of these subpoenas

was addressed to the Records Custodian at an entity formed by Phillips:

---

[3]      One investor said that Phillips showed him a video of a car commercial in English, and then replayed the commercial in German.   There are certainly explanations for how Phillips could do this, other than that he used the software he claimed to have developed. Two other investors (a couple) said that Phillips showed them something, but he told them to look away while he loaded it, and they have no idea what they saw.   An investor in Phillips's "Canadian" scheme told law enforcement that Phillips did not demonstrate the software but had a website that "sort of showed it."

| |
|---|
| AMP/JRP/SPP VA REALTY LLC |
| BARNES AND PHILLIPS, INC. |
| BLUE OCEAN ISP PARTNERS, INC. |
| CAN GDLP DEVELOPMENT, LLC |
| DEU GDLP DEVELOPMENT, LLC |
| DLP GLOBAL LLC |
| EDUCTECH GLOBAL HOLDINGS, INC. |
| EDUCTRAN CORP. |
| G.R.C.E.A. INCORPORATED |
| GAPPSCOR DEVELOPMENT, LLC |
| GEDU APPSCOR DEVELOPMENT, LLC |
| GLOBAL APPS CORPORATION |
| GLOBAL DLP.COM.CA, INC. |
| GLOBAL DLP.COM.DE, INC. |
| GLOBAL EDUAPPS CORPORATION |
| GLOBAL WEB AUDIO.US., INC. |
| GP GLOBAL GROUP, LLC |
| W3 GLOBALDLP TECHOLOGY, INC. |

Each of the subpoenas included an identical Attachment A which listed the records sought.  This list included, among many other records, "any and all business plans, brochures, etc. prepared for the marketing of products/technology to either investors or end-users" and "all corporate bookkeeping records and other financial records" including gross receipts and income records, cash receipts and disbursement records, sales and purchase records, accounts receivable and payable ledgers, all sales and expense invoices, and checking and savings account records.  (Two of these subpoenas are attached as Exhibits 1 and 2, as examples of the subpoenas.)

On September 7, 2018, FBI Special Agent Matthew Marlowe of the Lynchburg, Virginia Resident Agency met Phillips at the United States District Courthouse in Lynchburg by prior arrangement.  There, Phillips accepted service of the subpoenas.[4]

When Agent Marlowe gave Phillips the subpoenas, Phillips gave Agent Marlowe a letter/document titled "Notice of Formal/Legal Protest by Glenn W. Phillips of Served Illegal Subpoena Based By/On False, Malicious and Wrongful Prosecution From FBI/DOJ Weaponization."  (Exhibit 3.)  Phillips's letter demanded that the FBI/DOJ provide him with documents, including a list of everyone who had contacted the FBI; a list of everyone who had been interviewed; all meeting logs, notes, and records; all case file documents; all special agents involved; and all FBI/DOJ lawyers involved.  He demanded that he be provided with proof that the subpoena [sic] and the underlying FBI/DOJ investigation are a wrongful prosecution.

Phillips never produced any records pursuant to the grand jury subpoenas.

---

[4]     Because the grand jury subpoenas were directed to the Records Custodians of Phillips's companies, Phillips – in his capacity of records custodian – had no Fifth Amendment privilege to resist producing the records.  *United States v. Braswell,* 487 U.S. 99 (1988) (corporate custodian may not resist subpoena for corporate records on the ground that it would violate his Fifth Amendment right against self-incrimination); *In the Matter of the Grand Jury Empaneled on May 9, 2014,* 786 F.3d 255 3d Cir. 2015 (Fifth Amendment privilege against self-incrimination not available to corporate custodian to avoid compliance with grand jury subpoena for corporate records merely because he was that corporation's sole owner and employee).

## **The government's request for reciprocal discovery**

As noted above, the grand jury returned its indictment of Phillips in February 2021. By letter dated March 16, 2021, to the undersigned, Phillips's then counsel, Assistant Federal Defender Angie Halim, Esquire, requested discovery in this case. In response, the government produced a significant quantity of discovery on May 26, 2021. In the transmittal letter accompanying that production, the government requested reciprocal discovery, stating "Pursuant to Rule 16(b), the government demands prompt reciprocal production of documents, tangible objects and reports of examinations and tests as defined in that Rule." (Exhibit 4.) Phillips' counsel produced nothing.

By letter dated October 13, 2021, government counsel again requested reciprocal discovery:

> With its initial production of discovery, the government included a cover letter that stated in pertinent part:
>
>> Pursuant to Rule 16(b), the government demands prompt reciprocal production of documents, tangible objects and reports of examinations and tests as defined in that Rule.
>>
>> The government demands reciprocal disclosure of Jencks materials per Rule 26.2 and United States v. Nobles, 422 U.S. 225 (1975).
>
> I am renewing my request for reciprocal discovery and asking for your confirmation that such discovery will be forthcoming shortly, or does not exist.
>
> In producing reciprocal discovery, please provide all categories of things specified in Rule 16(b)(1)(A): "books, papers, documents, data, photographs, tangible objects, buildings, or places, or copies or portions of any of these items…."

Please also produce any reports or results of any physical or mental health examination(s) or any scientific test or experiment as described in Rule 16(b)910(B), and advise whether you intend to present any expert witnesses and if so, provide a summary of any testimony you intend to present from such experts.

(Exhibit 5.)

By email dated October 14, 2021, Ms. Halim replied, "At this point, no reciprocal discovery exists.  If that changes in the future, I will be mindful of defense counsel's obligations."  (Exhibit 6.)

To date, Phillips has produced no "books, papers, documents, data, photographs, tangible objects, buildings, or places, or copies or portions of any of these items…."  And quite specifically, he has not produced any language translation software ("documents, data … tangible objects") – the production of which is required by Rule 16.  Similarly, Phillips has produced no "financial statements, summaries, or reports … showing the financial position of the company"; no "business plans, brochures, etc. prepared for the marketing of products/technology"; no "financial records" including "disbursement records … expense invoices … savings account records … records disclosing the disposition of withdrawals … [or] checking account records" – again, the production of which is required by Rule 16 ("papers, documents, data") and the production of which was also required by the corporate subpoenas issued by the grand jury.

Accordingly, the government files this motion *in limine* to compel production of reciprocal discovery pursuant to Federal Rule of Criminal Procedure 16(b)(1)(A), including but not limited to translation software and business records or, in the

alternative, to exclude use of such evidence at trial.  The government respectfully

requests that this Court order the production of such evidence forthwith, by a date certain,

so that the government may inspect the materials (and engage an expert to inspect any

software) prior to trial.

## III.   ARGUMENT

### Rule 16(b) requires Phillips's prompt disclosure of reciprocal discovery

Rule 16(b) of the Federal Rules of Criminal Procedure governs a defendant's

disclosure.  Among other things, Rule 16(b)(1)(A) requires that if a defendant requests

disclosure under Rule 16(a)(1)(E) and the government complies, the defendant must

likewise produce discovery to the government.  Specifically, Rule 16(b)(1)(A) provides:

> If a defendant requests disclosure under Rule 16(a)(1)(E) and the
> government complies, then the defendant must permit the government,
> upon request, to inspect and to copy of photograph books, papers,
> documents, data, tangible objects, building or places, or copies or portions
> of any of these items if:
>
> (i)     the item is within the defendant's possession, custody or control; and
>
> (ii)    the defendant intends to use the item in the defendant's case-in-chief
> at trial.[5]

---

5       Courts have differed on whether the term "case-in-chief" refers strictly to the
temporal stage of the trial (i.e., the presentation of witnesses by the defendant, after the
government has rested its case), or more broadly to the purpose for which the defendant
intends to use the evidence (i.e., the defendant's cross-examination of a government
witness to buttress the defendant's theory of the case); however, most courts have
adopted the latter interpretation.  *United States v. Ellison,* 704 Fed. Appx. 616, 620(9th
Cir. 2017) ("The district court properly refused to limit [defendants'] production
obligation [under Rule 16] to those exhibits they planned to introduce with their own
witnesses by refusing to cabin their 'case-in-chief' to the period after which they called

(Continued…)

Fed. R. Crim. P. 16(b)(1)(A).

The rule is meant to provide an independent right of discovery for both the defendant and the government, in order to "contribute to both effective and fair administration." *Id.*, Advisory Notes, 1974 Amendment.

In this case in particular, production of Rule 16(b) evidence now will prevent the need for a possibly lengthy continuance at trial, should Phillips attempt to use previously undisclosed software, data, or documents at that time. The government anticipates that Phillips may claim at trial, directly or indirectly, that in fact he had developed software capable of simultaneous language translation.[6] The government seeks to bar Phillips

---

their first witness at trial, because a defendant may establish his defense by cross-examining the government's witnesses …. i.e.., evidence that was 'offered to show an alternative view of the truth.'" [footnote omitted].); *United States v. Napout,* 2017 WL 6375729 (E.D.N.Y. 2017) ("In short, contrary to Defendants' arguments, there is general consensus among courts that if a defendant seeks to present affirmative (non-impeachment) evidence through a government witness during the government's case in chief, the defendant's presentation of evidence during such an examination should be treated as part of the defendant's 'case-in-chief' for purposes of the defendant's disclosure obligations under Rule 16. *United States v. Larkin,* 2015 WL 4415506 (D. Nevada, 2015) (collecting cases)."); *United States v. Holden*, 2015 WL 1514569 (D. Or. March 19, 2015) (construing the term "case-in-chief at trial" in Rule 16(b) to refer to the purpose for which the defendant intends to use the evidence at trial rather than in a strictly temporal sense (i.e., the period of trial after the government rests)).

[6]     The government's evidence proves a negative: Phillips never developed any such software. Of course, it is no defense if the software does exist; Phillips nonetheless falsely solicited money from investors so that he could travel internationally to market his software and falsely told investors that they money was safely accruing interest – but in fact he never traveled internationally and there is no evidence that he marketed anything, and the money was not safely accruing interest anywhere; instead, the evidence shows

(Continued…)

from presenting -- directly, through his own testimony or through a third-party witness, or indirectly, in cross-examination of a government witness -- software or data of any kind purporting to be Phillips's translation software, in any stage of development – unless he produces the software forthwith.  To wait until the time of trial to produce software or data of any kind purporting to be translation software would unfairly prevent the government from subjecting such software or data to examination by an expert to determine the software's capability, provenance, and origin date, and so would prejudice the government, and could enable a fraud upon the court.  If Phillips truly possesses such software, he is required to produce it pursuant to Fed. R. Crim P. 16(b), but he has not.

Similarly, the government anticipates that at trial, Phillips may attempt to use – directly or indirectly – documents or other records, data, etc. that Phillips will claim are evidence of his marketing efforts, and/or his non-criminal disposition of the investors' funds.  If Phillips has any documents, business records, bank account records or the like, he is required to produce those under Rule 16(b), just as he was required to produce them pursuant to the grand jury subpoenas.  To wait until mid-trial to produce any of the items listed in Rule 16(b), including business records, would unfairly prevent the government's agents from reviewing such materials, and could enable a fraud upon the court.[7]

_____

that he spent investor money at restaurants and hotels and numerous commercial establishments for ordinary living expenses, as well as to purchase the house in which he lives.

[7]     It is not unheard-of for defendants (and perhaps especially those accused of fraud)

(Continued…)

Accordingly, the government asks this Court to order the production of any such evidence forthwith, and to bar the use of any such evidence or purported evidence that is not produced forthwith.

<u>Exclusion of evidence as a remedy for a violation of Rule 16(b)(10(A)</u>

Rule 16(d)(2) sets forth possible remedies that a court may employ when a party fails to provide discovery in accordance with the rule.  One of these remedies is exclusion of the evidence.  Specifically, that subsection provides as follows:

> (2) Failure to Comply.  If a party fails to comply with this rule, the court may:
>
>> (A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions;
>>
>> (B) grant a continuance;
>>
>> (C) prohibit that party from introducing the undisclosed evidence; or
>>
>> (D) enter any other order that is just under the circumstances.

Accordingly, appellate courts have affirmed the exclusion of defense evidence where the defense failed to provide the evidence in advance of trial.  *E.g., United States v. Copp,* 1 F.4th 573 (8th Cir. 2021) (district court did not abuse its discretion when it

---

to produce false documents as well as false witnesses. *E.g., Taylor v. Illinois*, 484 U.S. 400 (1988) ("affirming trial court' exclusion of defense witness whose name had not previously been disclosed by defense; "Discovery, like cross-examination, minimizes the risk that a judgment will be predicated on incomplete, misleading, or even deliberately fabricated testimony.  The "State's interest in protecting itself against an eleventh-hour defense" is merely one component of the broader public interest in a full and truthful disclosure of critical facts. … [T]here is something suspect about a defense witness who is not identified until the 11th hour has passed.") *Id.,* 484 U.S. 411-12, 414 (footnote omitted).)

17

denied defendant's mid-trial request to introduce allegedly exculpatory photos as a sanction for discovery violation); *United States v. Hardy*, 586 F.3d 1040, 1044 (6th Cir. 2009) (district court did not err in excluding the copies of check stubs, where defendant and her counsel had access to the copies of the check stubs at least one week prior to trial but willfully and purposefully chose not to disclose those documents to the government until the day of trial when defense counsel sought to introduce the check stubs into evidence, in clear violation of Rule 16(c).; *United States v. Scholl,* 166 F.3d 964 (9th Cir. 1999) (district court did not abuse its discretion in excluding copies of nine cashier's checks as a sanction for his violation of Rule 16, where district court found that defendant's failure to disclose the checks until after the jury was sworn was " 'a strategic decision to withhold the [evidence]' until the government would be unable to investigate"); *United States v. Aceves-Rosales,* 832 F.2d 1155, 1156-57 (9th Cir. 1987) ("The Public Defender made a strategic decision to withhold the document until after the close of the government's case. He and his client must accept the risk arising from this behavior.").

Of course, the Court can always grant a less onerous sanction, such as a mid-trial continuance so that the government can inspect and analyze the proffered evidence. However, in this case, if Phillips attempts to introduce software or business records, any effort by the government to inspect and analyze such evidence could require significant time. For example, if Phillips proffers software, the government will need to engage a software expert to review the software and perhaps conduct tests or independent research,

which could require days if not weeks to complete.  Likewise, if Phillips proffers

business records, the government will need to make some efforts to determine the

records' authenticity, and if the records purport to involve other companies or

international contacts, once again it could require days or weeks (or in the case of foreign

information requiring treaty assistance from a foreign country, months) for the

government to complete its investigation.  All of this would be very disruptive to a jury

trial – and all of this is easily avoided by prompt compliance with Rule 16.

**IV.**    **CONCLUSION**

For all of the foregoing reasons, the government respectfully requests that this

Court grant the government's motion *in limine* to compel production of Rule 16(b)

evidence forthwith, by a date certain, or in the alternative, to exclude use of such

evidence at trial.

Respectfully submitted,

JENNIFER ARBITTIER WILLIAMS
United States Attorney


 /s Karen L. Grigsby
KAREN L. GRIGSBY
Assistant United States Attorney

19

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing was served by electronic court filing

on the following defense counsel:

Mark T. Wilson, Assistant Federal Defender
Federal Defender Association of Philadelphia
The Curtis Center Building, 601 Walnut Street, Suite 540 West
Independence Square West, Philadelphia, PA 19106
Via email: mark_wilson@fd.org


/s Karen L. Grigsby
KAREN L. GRIGSBY
Assistant United States Attorney


Date: 4/25/22